**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 15-117 (RBW) |
| | ) | |
| GEORGE WILSON, III | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The defendant, George Wilson, III, is currently serving a 31-year term of imprisonment

that was imposed following his plea of guilty to three counts of brandishing a firearm during and

in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and one count of

discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C.

§ 924(c)(1)(A)(iii). See Judgment in a Criminal Case ("Judgment") at 1–2 (Mar. 17, 2022), ECF

No. 385. Currently pending before the Court is the defendant's pro se motion to vacate, set aside

or correct the judgment. See generally Motion Under 18 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody (Def.'s Mot.), ECF No. 393. Upon careful

consideration of the parties' submissions[1], the Court concludes that it must deny the motion

because the defendant fails to demonstrate that he received ineffective assistance of counsel.

---

[1]In addition to the filing already identified, the Court considered the following submissions and materials in rendering its decision: (1) the United States' Response in Opposition to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 393) ("Gov't's Opp'n"), ECF No. 399; (2) the defendant's Reply to the Government Response in Opposition to Defendant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Def.'s Reply"), ECF No. 403; (3) the defendant's Memorandum of Law in Support of 2255 Motion ("Def.'s Mem"), ECF No. 403-1; (4) the United States' Sur-Reply to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 393) ("Gov't's Sur-reply"), ECF No. 406; (5) the defendant's Motion for Judicial Notice in Support of § 2255 Motion ("Def.'s Mot. for Judicial Notice"), ECF No. 409; (6) Day 1 of the Official Transcript of the Jury Trial that was held on Sept. 27, 2021 ("Trial Tr. Day 1"), ECF No. 365; (7) Day 2 of the Official Transcript of the Jury Trial that was held on Sept, 28, 2021, ECF No. 366; (8) Day 3 of the Official Transcript of the Jury Trial that was held on Sept. 29, 2021 ("Trial Tr. Day 3"), ECF

(continued . . .)

## I.    BACKGROUND

On August 6, 2019, the government filed a second superseding indictment charging the defendant with six counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951; one count of attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951; one count of discharging a firearm during and in relation to an attempted crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (iii); two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); and six counts of brandishing a firearm during an in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii).  Second Superseding Indictment, ECF No. 209.

The trial of this case commenced before a jury on September 27, 2021.  See Minute ("Min.") Entry, (Sept. 27, 2021).  After three days of witness testimony, and after both the government and the defense completed the presentation of their cases, on September 30, 2021, the defendant entered into a plea agreement with the government and pleaded guilty to four offenses: three counts of brandishing a firearm during or in relation to a crime of violence that each carried a seven-year mandatory minimum prison sentence and one count of discharging a firearm during and in relation to a crime of violence that carried a ten-year mandatory minimum prison sentence.  Change of Plea at 1, ECF No. 353; see Plea Agreement at 1–9, ECF No. 352-1; see also Second Superseding Indictment at 5, 7, 15, 19.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed to a 31-year prison sentence, which consisted of consecutive seven-year sentences for each of the firearm brandishing offenses and a ten-year sentence for the firearm discharging offense.  See Plea Agreement, at 6–7.  As is the Court's

---

(. . . continued)
No. 367; and (9) the Official Transcript of the Plea Hearing that was held on Sept. 30, 2021 ("Change of Plea Hearing Transcript"), ECF No. 368.

routine practice, it conducted an extensive colloquy with the defendant to confirm that he was competent to enter a guilty plea, that he understood the Constitutional and other rights he was waiving by entering a guilty plea, the penalties he agreed with the government the Court should impose if he pleaded guilty, and he was knowingly and voluntarily pleading guilty. See Change of Plea Hearing Transcript ("Tr.") at 2:16–42:2. On March 17, 2022, the Court sentenced the defendant to the 31-year term of imprisonment the defendant agreed with the government should be imposed. See Judgment at 3; see also Plea Agreement at 7.

On March 29, 2022, the defendant filed a notice of appeal, see Notice of Appeal at 1, ECF No. 386, and on May 20, 2022, the Third Circuit granted the government's motion for summary affirmance of the defendant's conviction, see Order at 1, United States v. George Wilson, III, 22-1574, ECF No. 15-1 (3d. Cir. May 20, 2022).

On July 3, 2023, the defendant filed a motion to vacate, set aside or correct the judgment. See Def.'s Mot at 1. On July 7, 2023, the Court issued a Notice and Order to the defendant pursuant to United States v. Miller, 197 F. 3d 644 (3d. Cir. 1999), informing him that he had the option of (1) withdrawing his § 2255 Motion and subsequently filing a new § 2255 motion that contained every ground that may entitle him to relief; (2) amending his § 2255 motion to include any additional claims or supporting materials; or (3) having his § 2255 Motion adjudicated as filed. Order (July 7, 2023) at 2, ECF No. 395. The defendant replied on August 1, 2023, with a "request for clarification" in which he stated "that he has only put in one [§] 2255 [motion] in support of all argument[s][,]" Request for Clarification at 1–2, ECF No. 396, which the Court interpreted as an election of third option—i.e., that the defendant wished to have the motion as filed adjudicated by the Court, Order (Aug. 11, 2023) at 1–2, ECF No. 397.

The government responded in opposition to the defendant's motion on September 11, 2023, see generally Gov't's Opp'n, and the defendant filed a reply in support of his motion on November 15, 2023, see generally Def.'s Reply.  On December 1, 2023, the government moved for leave to file a Sur-Reply in order to respond to "a 32-page 'Memorandum of Law' that [the defendant] claimed to have mailed with his initial Motion, but that was not previously docketed." United States' Motion for Leave to File Sur-Reply to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 393), at 1 ECF No. 404.  The Court granted the government's request on December 1, 2023, Order (Dec. 1, 2023), ECF No. 405, and the government filed its sur-reply on December 11, 2023.  See generally Gov't's Sur-reply.  On November 26, 2024, the defendant filed a Motion for Judicial Notice in Support of § 2255 Motion in which he compared his case to United States v. Baker, 109 F. 4th 187 (3d. Cir. 2024), a recently decided Third Circuit case.  See Def.'s Mot. for Judicial Notice at 1.  And, on February 28, 2025, the defendant filed a Motion for Leave to File Supplemental 2255 Motion. See generally ECF No. 410("Def.'s Mot. to File Supplement").

## II.   STANDARD OF REVIEW

### A.   Motions to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255

28 U.S.C. § 2255 provides that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside[,] or correct the sentence.

28 U.S.C. § 2255(a).  "As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence."  United States v. Travillion, 759 F.3d 281,

288 (3d Cir. 2014).  "Indeed, relief under § 2255 is available only when 'the claimed error of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'"  Id. (internal quotation marks omitted) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).  In considering a § 2255 motion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks omitted) (quoting Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).

A "district court is required to hold an evidentiary hearing" in response to a § 2255 motion, "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  Id. at 545–46 (internal quotation marks omitted).  In other words, a "[§] 2255 [m]otion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle [the p]etitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  United States v. Potter, No. 18-cr-279 (AJS), 2023 WL 1996695, at *3 (W.D. Pa. Feb. 14, 2023) (citing United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005)).  Additionally, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ).

Here, the Court concludes that an evidentiary hearing is not necessary because all of the relevant evidence needed to adjudicate the petitioner's claims are either before the Court or otherwise in the parties' possession.  Accordingly, there is no need to further develop the factual record through an evidentiary hearing.  Booth, 432 F.3d at 546 ("[T]he district court abuses its

discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief.").

## B.    Ineffective Assistance of Counsel

"Under Strickland v. Washington, 466 U.S. 668 (1984), a habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 209–10 (3d Cir. 2012).

In order to show that counsel's performance was deficient, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness[,]" Strickland, 466 U.S. at 688, and overcome the "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance[,]" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).  Specifically, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Id. at 105 (quoting Strickland, 466 U.S. at 690).  In other words, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" and therefore "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Id. at 697.  To show that "counsel's deficient performance caused the petitioner prejudice[,]" Ross, 672 F.3d at 210, "a challenger

6

must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]'" Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Accordingly, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding[,]'" Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 693), rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable[,]'" id. (quoting Strickland, 466 U.S. at 687).

Moreover, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Lee v. United States, 582 U.S. 357, 364–65, (2017) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). However, "[s]olemn declarations in open court carry a strong presumption of verity [and t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Therefore, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences," Lee, 582 U.S. at 369.

### III.    ANALYSIS

The defendant raises six grounds for relief under 28 U.S.C. § 2255, all related to the alleged ineffective assistance of his counsel, Frank Walker. See Def.'s Mot. at 4–11. He claims that his counsel was ineffective because: (1) his counsel failed to call four "crucial

eyewitness[es,]" id. at 4; (2) his counsel "fail[ed] to object to the [C]ourt's failure to comply with Title 18 U.S.[C.] § 924(c)[,]" id. at 5; (3) his counsel failed to notify him of a "20 year plea offer by the [g]overn[ment,] id. at 7; (4) his counsel failed to challenge attempted Hobbs Act robbery as a predicate offense under 18 U.S.C. § 924(c), id. at 8; (5) his counsel "coerced him into" an involuntary and unknowing guilty plea, id. at 11; and (6) because his counsel's alleged combined deficiencies created "cumulative [p]rejudice[,] id.  In his supplemental motion, the defendant also argues that his counsel was ineffective for failing to file a direct appeal of the Court's denial of his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal.  Def.'s Mot. to File Supplement at 1.  The government argues in response that "all of [the defendant's] claims are meritless" and provides a specific response to each allegation.  See Gov't's Opp'n at 9, 10–22.

The Court will address each of the defendant's claims in turn.

## A.    Whether the Defendant's Counsel Was Ineffective for Failing to Call and Cross Examine Witnesses

The defendant first argues that his counsel was ineffective for failing to "call and/or subpoena" four witnesses: Grace Collins; Mr. and Mrs. Duncan; and Michael Allen.  Def.'s Mot. at 4.

The defendant alleges that Grace Collins, an employee of one of the stores the defendant was charged with robbing, made a statement to law enforcement in which she identified the robber as a white male because she could see his neck.  Def.'s Mem. at 7.  According to the defendant, who is Black, Grace Collins "was in the best position to positively identify the perpetrator in the court room as [a] white male" and his counsel's performance was therefore deficient because he did not "subpoena, interview[,] or call/present" her as a witness.  Id.  The

8

government responds by noting that, during trial, the defendant's counsel "elicited testimony from Ross Township Police [D]etective Brian Kohlhepp that during the investigation, a white male was one possibility of the suspect that officers were looking for" because of Grace Collins' statement to law enforcement.  Gov't's Sur-reply at 4; see Trial Tr. Day 3 at 195:11–196:22. The government also argues that the defendant's claim fails "because evidence presented at trial conclusively established that [the defendant] committed the [robbery that Grace Collins witnessed]" and therefore "[Grace Collins'] purported testimony would not have moved the needle in [the defendant's] favor."  Id.

The defendant also alleges that he "had the right for the [j]ury to hear the statement/testimony of Mr. and Mrs. Duncan along with the statement of Sgt. Blaze that the store was robbed for [$]691.00, but after a thorough search of [the defendant] and his vehicle he was in possession of only $291.00."  Def.'s Mem at 9.  The government responds that Mr. Leonard Duncan, an off-duty police officer who witnessed one of the charged robberies, did in fact testify at trial and explained that he saw the defendant leave a gas station convenience store on December 26, 2014 and provided his license plate and vehicle description to other police officers.[2]  See Gov't's Opp'n at 9; Gov't's Sur-reply at 5.  As the government notes, Leonard Duncan's testimony "supported the United States' case against [the defendant]" and the defendant's counsel cross-examined him.  Gov't's Opp'n at 9.

Finally, the defendant claims that his counsel's failure to cross-examine Michael Allen, the individual who was shot during the charged attempted Hobbs Act robbery, "deprived [him of] the right to adequately present his defense before the jury" because "Allen also stated that the

---

[2] Mrs. Duncan, who is also a police officer and who was with her husband when they witnessed the robbery, did not testify at trial but the defendant offers no explanation of how her testimony would have differed from her husband's testimony.

shooter was a white male wearing black." Def.'s Mem. at 8. The government accurately responds that, contrary to the defendant's claim, his counsel did cross-examine Michael Allen. Gov't's Sur-reply at 4–5; see Trial Tr. Day 1 at 94:4–12, 104:6–105:1. The government notes that the defendant "offers no corroboration" for his claims regarding Michael Allen's purported statement about the shooters' appearance and that those claims are contradicted by the record because Michael Allen testified "that he did not see the skin of the robber, whose face was fully covered." Id. at 5; cf. Trial Tr. Day 1 at 102:5–102:12.

In addition to the specific challenges noted above, the government argues that this claim, like all of the defendant's other ineffective assistance of counsel claims, "is refuted by the Court's thorough change of plea colloquy in which [the defendant] affirmed that he was completely satisfied with his legal representation, wished to plead guilty to the offenses set forth in his plea agreement, and was guilty of each of those offenses." Gov't's Sur-Reply at 2. The government also notes that "during [the plea] colloquy, the Court directly told [the defendant] that he had the right to bring witnesses into Court to testify at trial[,]" but the defendant "made no mention that he wished to do so or that he was dissatisfied with [his counsel's] efforts in this regard." Id.

In deciding whether an attorney's performance was deficient under the first Strickland prong, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" which means that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. Indeed, choosing not to call a witness "is precisely the sort of strategic trial decision that Strickland protects from second-guessing." Henderson v. DiGuglielmo, 138 Fed. App'x 463, 469 (3d. Cir. July 8, 2005) (quotations omitted).

10

Here, the defendant has offered no evidence to suggest that his counsel's decisions regarding these witnesses were not based on "sound trial strategy." See Strickland, 466 U.S. at 689. Two of these witnesses provided testimony that supported the government's case, and the defendant's counsel cross-examined them accordingly. The defendant's counsel was also able to make the point that the defendant claims was lacking—that Grace Collins told police she believed a white man committed one of the robberies—by eliciting testimony to that effect from a different witness. Thus, the Court finds that the defendant has failed to show that his counsel's performance was not deficient, and the "contemporaneous evidence" of the defendant's expressed desire to plead guilty, without mentioning any dissatisfaction about his counsel's performance or decisions regarding witnesses, underscores this conclusion. See Blackledge, 431 U.S. at 73–74. And, even if there was a basis to find that counsel's performance was somehow deficient, the defendant's characterizations of how these individuals may have testified if counsel had acted as the defendant contends he should have, is insufficient to establish prejudice such that "the result of the proceeding would have been different" in light of the overwhelming evidence of the defendant's guilt. See Harrington, 562 U.S. at 104. Accordingly, the Court rejects the defendant's first claim of ineffective assistance of counsel predicated on his counsel's alleged failure to call witnesses and his cross-examination of the witnesses who did testify.

**B.    Whether the Defendant's Counsel Was Ineffective for Failing to Object to the Application of 18 U.S.C. § 924(c)**

The defendant next argues that he was "denied the effective assistance of counsel when [his] counsel fail[ed] to object to the [C]ourt[']s failure to comply with Title 18 U.S.[C.] § 924(c)." Def.'s Mot. at 5. Specifically, the defendant argues that his counsel was ineffective for (1) not objecting to the government inappropriately "stacking" multiple § 924(c) counts and (2) not objecting to a sentence that exceeded the statutory maximum. Def.'s Mem. at 13–16.

The defendant references the First Step Act of 2018, Pub. L. No. 115-391, § 403(a), which prevents the "stacking" of multiple § 924(c) offenses in a single indictment to trigger a 25-year mandatory minimum. See United States v. Robinson, No. 06-cr-318 (DSC), 2022 WL 17546525, at *1 (W.D. Pa. Dec. 9, 2022) (explaining that under the First Step Act of 2018, "the penalties for a second consecutive § 924(c) offense can only be imposed where there is an intervening conviction between the first and second offenses"). But, because the defendant was not sentenced to a 25-year mandatory minimum, this provision is inapplicable to him. And, because "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument[,]" the Court must reject the defendant's claim premised on his counsel's failure to object to "stacking" § 924(c) charges. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). For the same reason, and since the defendant received the statutory mandatory minimum sentence for each offense of conviction, the Court must reject the defendant's claim of ineffective assistance based on his counsel's failure to object to him receiving a sentence beyond the statutory maximum. See id.

## C.    Whether the Defendant's Counsel Was Ineffective for Allegedly Failing to Notify the Defendant of a Plea Offer

The defendant also argues that his counsel was ineffective by not allegedly informing him of an earlier "20-year [p]lea offer by the [g]overnment." Def.'s Mot. at 7. Although the defendant styles this claim as his counsel's "failure to notify [him]" about an alleged plea offer, his memorandum indicates that his counsel did in fact inform him of a purported 20-year plea offer, but "advised [him] that it would not be in his best interest to accept" this offer and instead "advised [him] that he had something better in mind and that he could seek a better plea." Def.'s Mem. at 18–19. The defendant therefore argues that "had it not been for counsel's misadvice and reassurance[, he] more likely would not have plead[ed] guilty." Id. at 20. To the extent that

12

the defendant maintains that the alleged 20-year plea offer was not communicated to him, that

argument is belied by the following transcript excerpt:

> MR. WALKER: Sure, Your Honor. Lastly, there was an informal plea offer made in the past, and I want to place that on the record. It was for a 20 year term of imprisonment. I communicated that to my client as an informal offer from the government. He has rejected that offer, and I would just like to place that on the record.
>
> THE COURT: Mr. Wilson, you just heard what your lawyer said about a plea offer that the government made to you. Is it your desire to reject that offer?
>
> THE DEFENDANT: Yes, Your Honor.

Gov't's Opp'n, Exhibit ("Ex.") 1 (Tr. of an Excerpt from the Jury Selection Proceedings (Sept.

23, 2021)) at 2:1–2:11, ECF No. 399-1.

In response to the defendant's claim that his counsel was ineffective for allegedly

advising him to reject the purported 20-year plea offer, the government argues that the

defendant's allegation is uncorroborated, that no formal 20-year plea offer was ever extended to

the defendant, and, even if one had been offered, it was rejected by the defendant in the above

cited colloquy.  Gov't's Sur-reply at 7–9.  The government is correct in all three respects.

"The right to effective assistance of counsel applies to plea bargaining, 'in part because

poor bargaining can lead to heavier sentences.'" United States v. Tarnai, 782 F. App'x 128, 131

(3d Cir. Aug. 12, 2019) (quoting Richardson v. Superintendent Coal Twp. SCI, 905 F.3d 750,

765 (3d Cir. 2018)).  In order to show that counsel's representation in conjunction with the plea

bargaining process was prejudicial, "the defendant must first establish a reasonable probability

that the plea agreement would have been consummated."  Id. at 132 (quoting Missouri v. Frye,

566 U.S. 134, 147 (2012)).  If in fact a plea offer was made by the government, this "requires a

reasonable probability that: (1) 'the defendant would have accepted the plea,' (2) 'the

prosecution would not have withdrawn it in light of intervening circumstances,' and (3) 'the

court would have accepted its terms.' Id. (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)). Then, the defendant must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id. (quoting Frye, 566 U.S. at 147).

As a preliminary matter, "the [Sixth Amendment right to effective assistance of counsel] does not attach to all aspects of negotiation between defense counsel and prosecutor[, rather] [i]ts protections are triggered by formal offers." Id. at 131. Here, the government disputes that a formal 20-year offer was ever extended. Gov't's Sur-reply at 7. According to the government, the only formal plea offer extended to the defendant is the one that he ultimately accepted. Id. The record supports the government's position, and the Court rejects the defendant's allegations to the contrary because "they are contradicted by the record [and] inherently incredible." Potter, 2023 WL 1996695, at *3. Thus, because no formal 20-year offer was ever extended to the defendant and because he has not established a reasonable probability that he would have received an offer to plead to a lesser charge or a sentence of less prison time than he received, the defendant has not shown that he was prejudiced by his counsel's representation. Accordingly, the Court must reject his ineffective assistance of counsel claim predicated on his counsel's alleged failure to properly advise him of an earlier plea offer.

**D.     Whether the Defendant's Counsel Was Ineffective for Not Challenging Attempted Hobbs Act Robbery as a Predicate Offense Under 18 U.S.C. § 924(c)**

The defendant next argues that his counsel was ineffective by not "challeng[ing] the fact that an [a]ttempt offense cannot be a predicate for a 924(c) offense." Def.'s Mot. at 8.[3] The

---

[3] The defendant's plea agreement included a provision in which he "specifically waive[d] the right to file any appeal or collateral attack based on any argument or allegation that Hobbs Act Robbery or Attempted Hobbs Act Robbery

(continued . . .)

defendant pleaded guilty on September 30, 2021.  Min. Entry at 1 (Sept. 30, 2021), ECF No. 353.  At that time, the controlling law of the Third Circuit was that attempted Hobbs Act robbery was a crime of violence for purposes of 18 U.S.C. § 924(c).  United States v. Walker, 990 F.3d 316, 325 (3d Cir. 2021), cert. granted, judgment vacated, 142 S. Ct. 2858, (2022) ("Given the statutory language and the clear congressional intent behind it, we join the courts that hold attempted Hobbs Act robbery is categorically a crime of violence.").  Although the Supreme Court subsequently held that attempted Hobbs Act robbery is not a crime of violence in the section 924(c) context, as the government notes, "failing to predict a change in the law is not deficient performance."  United States v. Doe, 810 F.3d 132, 154 (3d Cir. 2015) (citing Sistrunk v. Vaughn, 96 F. 3d 666, 672 (3d. Cir. 1996)).  And, in any event, the defendant cannot show prejudice.  Before pleading guilty, the defendant faced a minimum sentence of 504 months, far beyond the 372-month sentence the government agreed to recommend pursuant to the plea agreement.  By entering into a plea agreement that was consistent with the applicable state of the law when the plea was entered, the defendant gained a significant benefit and his erroneous post hoc assertions that, but for his counsel's alleged non-existent errors, he would not have pleaded guilty are inadequate to show prejudice.  See Lee, 582 U.S. at 363.  Accordingly, the Court must reject the defendant's ineffective assistance of counsel claim predicated on his counsel's failure to object to attempted Hobbs Act robbery being a crime of violence.

---

(. . . continued)

are not 'crimes of violence' within the meaning of Title 18, United States Code, Section 924(c)," Plea Agreement at ¶ 12, but retained the right to raise ineffective assistance of counsel claims, id.

**E.    Whether the Defendant's Counsel Was Ineffective for Allegedly "Coercing" the Defendant to Accept the Government's Plea Offer**

The defendant's penultimate ineffective assistance of counsel[4] argument is that his counsel "coerced" him into accepting the government's plea offer. Def.'s Mot. at 11. According to the defendant, "the records[,] files[,] and transcripts [] reflect that at all time[s] [he] clearly expressed his desire to [] exercis[e] his right to proceed to trial." Def.'s Mem. at 25. The defendant repeats his argument that his counsel was deficient for not calling witnesses and claims that, when he learned his counsel would not be calling those witnesses, "[he] discovered the odd[s were] against him [and] that the only option he had was to accept the guilty plea or face a life-sentence." Id. at 26. He alleges that, because of his counsel's representation, he had "less than 24-hours to accept the plea" and "was not accurately informed of his exposure in pleading guilty in a timely fashion." Id. at 26–27. In sum, the defendant argues that "his guilty plea was unknowing and [in]voluntary." Id. at 25. The record proves otherwise.

Before accepting his plea of guilty, the Court engaged in a colloquy with the defendant during which he confirmed that he read and signed the plea agreement, Change of Plea Hearing Tr. at 4:1–4:9, that he understood the plea agreement, id. at 4:10–4:12, and that he did not need more time to review the plea agreement, id. at 4:13–4:15. The defendant also repeatedly confirmed that he understood what rights he was giving up. Id. at 4:16–39:16. The Court's colloquy with the defendant concluded with the following exchange:

The Court: Has anybody threatened or forced you to enter this plea of guilty?

The Defendant: No, Your Honor.

---

[4] In its opposition, the government does not treat this claim as an ineffective assistance of counsel argument, but rather as "vague and conclusory" and "procedurally defaulted." Gov't's Opp'n at 15. With the benefit of the defendant's Memorandum of Law, the Court is convinced that the defendant is raising an ineffective assistance of counsel argument and will analyze it as such accordingly.

The Court: Whose decision is this to plead guilty? Yours or your lawyers?

The Defendant: Mine, Your Honor.

The Court: Have you had an opportunity to fully discuss this case with your lawyer?

The Defendant: Yes, Your Honor.

The Court: Are you totally satisfied with the legal representation he has provided to you?

The Defendant: Yes, Your Honor.

The Court: Do you have any complaints whatsoever you would like to make about his representation at this time?

The Defendant: No, Your Honor.

Id. at 39:21–40:10 (emphasis added).

Despite this exchange and the entirety of the plea hearing colloquy, the defendant requests an "on the record examination [because] the facts will support [his claim that] he was misadvised," Def.'s Mem. at 27, but the Court declines to do so because his allegations "cannot be accepted as true because they are contradicted by the record." Potter, 2023 WL 1996695 at *3. The plea hearing records shows that the defendant was not coerced into pleading guilty and the Court will "not upset [his] plea solely because of post hoc assertions . . . about how he would have pleaded but for his attorney's deficiencies." Lee, 582 U.S. at 369. Therefore, the Court must reject the defendant's claim that his counsel was ineffective by allegedly coercing him into accepting the government's guilty plea offer.

F.     Whether the Defendant's Counsel's Allegedly Deficient Performance Created "Cumulative Prejudice"

Finally, the defendant argues that the "cumulative effect" of his counsel's errors deprived him of a fair trial. Def.'s Mem. at 28. More to the point, the defendant contends that the

17

cumulative impact of his lawyer's representation "result[ed] in [him] being coerced into accepting a guilty plea offer, despite his constant request to proceed with his trial." Id. "[A] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007). "Accordingly, the analysis requires that at least two claims of ineffectiveness have merit such that their effect can be aggregated." United States v. Claude, No. 12-cr-33-01 (JED), 2020 WL 5083890, at *11 (E.D. Pa. Aug. 14, 2020) (citing Williams v. Superintendent, SCI Greene, 11-cv-4319 (ABB), 2012 WL 6057929, at *2 (E.D. Pa. Dec. 4, 2012)).

Here, the Court has already determined that no aspect of the defendant's counsel's representation was ineffective, so there can be no cumulative prejudice. See Janeski v. United States, 17-cr-016 (YK), 2021 WL 1906411, at *18 (M.D. Pa. May 12, 2021). And to reiterate, the record belies the defendant's claim that his decision to plead guilty was coerced. Accordingly, the Court must reject the defendant's ineffective assistance of counsel argument predicated on purported "cumulative prejudice."

**G.    The Defendant's Motion for Judicial Notice**

After briefing on his motion concluded, the defendant filed a Motion for Judicial Notice in Support of § 2255 Motion. See generally Def.'s Mot for Judicial Notice. Although styled as request for judicial notice, the defendant largely repeats his argument that his counsel was ineffective for "coerc[ing him] to turn the twenty year plea down." Def.'s Mot. for Judicial Notice at 2. For the reasons set forth above, the Court rejects this argument.

**H.      The Defendant's Motion for Leave to File a Supplemental § 2255 Motion**

On February 28, 2025, the defendant moved for leave to supplement his motion in order to raise an additional ineffective assistance of counsel argument.  See generally Def.'s Mot. to File Supplement.  This additional argument is premised on the defendant's claim that his counsel's Rule 29 motion was "inadequate" because it "fail[ed] to highlight critical deficiencies in the government's case including: the complete absence of direct identification evidence, lack of physical evidence linking [the defendant] to the crimes, unreliable cell tower data, and multiple conflicting witness descriptions of the perpetrator," id. at 1–2, and also that his counsel was ineffective "in failing to file a direct appeal of this Court's denial of [his] Rule 29 motion for judgment of acquittal," id. at 1.

> Motions under Section 2255 must be filed within one year of:
>
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255.  "For the purpose of starting the clock on § 2255's one-year limitation period, . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."  Clay v. United States, 537 U.S. 522, 525 (2003).  Here, the defendant's time for filing a petition for certiorari expired on August 18, 2022, 90 days after the entry of the Third Circuit's Judgment.  This supplement is

19

therefore time-barred and the Court will not consider it.[5] See United States v. Cash, No. 19-cr-190 (MJH), 2025 WL 2403589, at *1 (W.D. Pa. Aug. 19, 2025) (citing Clay, 537 U.S. at 525).

## I.       Whether the Court Should Issue a Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeal from . . . the final order in a proceeding under section 2255."  28 U.S.C. § 2253(c)(1).  "A certificate of appealability may issue [in a section 2255 proceeding] only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484, (2000).  The government argues that the Court should not issue a certificate of appealability because the defendant has not made that showing.  Gov't's Opp'n at 22.  For all the reasons set forth throughout this Opinion, the Court agrees and will therefore decline to issue a certificate of appealability.

## IV.       CONCLUSION

For the foregoing reasons, the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 393, is **DENIED**.

**SO ORDERED** this 27th day of May, 2026.[6]

REGGIE B. WALTON
United States District Judge

---

[5] The Court also notes that, as far back as August 1, 2023, the defendant indicated that he filed a § 2255 motion "in support of all [of his] argument[s]." Request for Clarification at 1–2, ECF No. 396.

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.